UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HTL MANUFACTURING PTE LTD., <br><br>   Plaintiff, <br>vs. <br><br>UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; ROBERT E. LIGHTHIZER, in his official capacity as U.S. Trade Representative; U.S. CUSTOMS & BORDER PROTECTION; Mark A. Morgan, in his official capacity as Acting Commissioner of U.S. Customs & Border Protection, <br><br>   Defendants. | **Court No. 20-00320** |

# **COMPLAINT**

Plaintiff, HTL Manufacturing PTE Ltd. ("HTLM"), by and through its attorneys, alleges and states as follows:

1. This action concerns Defendants undertaking of a trade war not authorized by the narrow parameters of U.S. statutory authority found at Section 301 of the Trade Act of 1974 ("Trade Act").

2. The escalation of the trade war through the imposition of a third round of tariffs was unauthorized on products covered by the so-called "List 3." *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

3. Section 304 of the Trade Act (19 U.S.C. § 2414) requires the Office of the United States Trade Representative ("USTR") to determine what action to take, if any, within 12 months after initiation of that investigation.

4. The USTR conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). The

investigation was initiated on August 18, 2017.

5. The List 3 tariffs were implemented on September 21, 2018. *See* 83 Fed. Reg. 47,974 . The List 4 tariffs were implemented on August 20, 2019. *See Notice of Modification of Section 301 action: China's Acts, Policies and practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). USTR therefore failed to issue List 3 and List 4 within that one-year window.

6. "Modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) does not permit USTR to expand the imposition of tariffs to other imports from China for reasons that are unrelated to the scope of the investigation.

7. USTR did however alter the tariffs in List 3 and List 4. These decisions to impose and then alter the tariff rates were in response to China's retaliatory duties and other unrelated issues.

8. The arbitrary manner in which Defendants implemented the List 3 tariff action also violates the Administrative Procedure Act ("APA").

9. USTR failed to provide sufficient opportunity for comment. Interested parties to simultaneously submit affirmative and rebuttal comments.

10. USTR failed to consider factors that were required by statute, such as the quantified burden imposed on U.S. commerce by China's unfair policies.

11. USTR also failed to adequately respond to the over 6,000 sincere comments received.

12. Therefore, this complaint asked that the Court set aside Defendants' actions as *ultra vires* and contrary to law. Defendants should be required to refund all tariffs collected under List 3 and 4 as applicable to Plaintiff, including interest accrued.

**JURISDICTION**

13. Subject matter jurisdiction exists in this action under 28 U.S.C. § 1581(i)(1)(B). Said

provision confers exclusive jurisdiction to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." See, 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

14. Plaintiff is an importer whose goods were the subject of section 301 tariffs on List 3 and/or List 4a.

15. Defendant United States of America imposed, assessed and collected the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

16. The USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. The USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4.

17. Defendant Robert E. Lighthizer is the U.S. Trade Representative, and is sued in his professional capacity only.

18. Defendant U.S. Customs & Border Protection ("CBP") collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4.

19. Defendant Mark A. Morgan is the Senior Official Performing the Duties of the Commissioner of CBP, and is sued in his professional capacity only.

## STANDING

20. Plaintiff holds standing to sue because it was "adversely affected or aggrieved by agency action within the meaning of" the APA per 5 U.S.C. § 702.

21. Title 28 U.S.C. § 2631(i) states that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely

affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

22. The tariffs imposed and collected by Defendants pursuant to List 3 and/or List 4 adversely affected and aggrieved Plaintiff by requiring the payment of unlawful duties.

## TIMELINESS OF THE ACTION

23. A plaintiff must commence an action "within two years after the cause of action first accrues" pursuant to 28 U.S.C. § 2636(i). Such action here takes place under 28 U.S.C. § 1581(i)(1)(B).

24. This lawsuit contests Defendants' action in imposing tariffs in List 3 and List 4. The earliest of these, List 3, was implemented on September 21, 2018. See, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).

25. Plaintiff's claims therefore accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register. Id.* Plaintiff has therefore timely filed this action within 2 years of that date.

## RELEVANT LAW

26. Section 301 of the Trade Act authorizes the USTR to investigate a foreign country's trade practices for "unreasonable or discriminatory" practices. *See* 19 U.S.C. § 2411(b).

27. Once an investigation shows such practices exist, the USTR may impose appropriate tariffs on imports as a direct remedy to that unfair practice. *See* 19 U.S.C. § 2411(b), (c)(1)(B).

28. USTR is required under Section 304 of the Trade Act to determine its course of action within 12 months after the initiation of the underlying investigation. *See* 19 U.S.C. § 2414(a)(1)(B), (2)(B).

29. Thereafter, Section 307 of the Trade Act allows USTR to "modify or terminate"

actions already taken under Section 301, when the "burden or restriction on United States commerce" imposed by the foreign country's practice has either "increased or decreased" or when the action "is no longer appropriate." *See* 19 U.S.C. § 2417(a)(1)(B), (C). New measures are not authorized by this provision.

## **PROCEDURAL HISTORY**

**I.      USTR's Investigation**

30.     On August 14, 2017, President Trump directed the USTR to consider initiating an investigation pursuant to Section 301(b) of the Trade Act. The investigation concerned China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *See Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

31.     The issue was therefore stated as whether Chinese laws and actions on intellectual property, innovation, and technology may "inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

32.     On August 18, 2017, the USTR formally initiated its investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." See, *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

33.     On March 22, 2018, USTR announced the results of its investigation and concluding that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and

burden or restrict U.S. commerce." *See* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018).

34. USTR based these findings on a host of factors. USTR did not however quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

35. In March 2018, the USTR stated that it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *See* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301- fact-sheet; *see also Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018).

**II.    Lists 1 & 2**

36. Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by the so-called Lists 1 and 2.

37. On April 6, 2018, USTR published notice of its intent to pursue tariffs against a third list (List 3) subject to an additional duty of 25 percent. *See Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on this List covered "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at

14,907. USTR explained that $50 billion "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under- section-301-action-ustr.

38. On June 20, 2018, USTR finalized List 1 subject to an additional duty of 25%. *See, Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).

39. USTR also announced that it intended to impose a 25% *ad valorem* duty on List 2 Chinese products, in order to "maintain the effectiveness of [the] $50 billion trade action". *Id.* at 28,712.

40. On August 16, 2018, USTR published the final List 2 of products subject to an additional duty of 25% *ad valorem* in List 2. *See, Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

### III.   List 3 and List 4

#### A.   List 3

41. Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301 due to China's unfair retaliation. See, THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018).

42. On June 18, 2018, President Trump, acknowledging that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision, instructed the USTR to consider imposing additional duties on products from China with an estimated trade value of $200 billion—despite the USTR having not yet implemented List 1 and List 2. *See* THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018).

43. The USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than to specifically address any the harms identified in its Section 301 investigation. *See* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018) (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

44. China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

45. On July 17, 2018, USTR published notice of its proposal to "modify" the action by maintaining the original $34 billion and $16 billion actions, and by taking "a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *See Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).

46. In this publication, the USTR invoked Section 307(a)(1)(C) of the Trade Act.

47. The USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

*48*. In its notice, the USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609. The USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports. *See id*. The USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id*.

49. On July 10, 2018, Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018).

50. On July 10, 2018, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209.

51. On August 1, 2018, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. See, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018).

52. Rather than asserting that the tariffs related to the Section 301 investigation, Ambassador Lighthizer stated that China "[r]egrettably . . . illegally retaliated against U.S. workers, farmers, ranchers and businesses." *Id*.

53. On Aug. 7, 2018, USTR then proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *See Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six

days ending on August 27, 2018. *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule).

54. USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018, as the new deadline for both *initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761.

55. That adjustment prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.

56. Eleven days after receiving thousands of final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." *See* THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018). In those remarks, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision to impose additional tariffs and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

57. On September 21, 2018, USTR announced that List 3 products would be subject to an additional tariffs. *See* 83 Fed. Reg. at 47,974.

58. The tariffs began at 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019. *Id.*

59. The USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.

60. As a masked legal support for its action, the USTR for the first time cited to Section 307(a)(1)(B) of the Trade Act, which provides that the USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices,

that are the subject of such action has increased or decreased." *Id.* (brackets omitted). The USTR concluded that the relevant burden "continues to increase, including following the one-year investigation period."

61. USTR also concluded that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.*

62. USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." See, Id. at 47,975.

63. In December 2018, and again in February 2019, the Administration announced that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

64. In May 2019, the USTR announced its intent to raise the tariff rate on List 3 goods to 25%. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).

65. The May 15, 2019 Notice cited to China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *See List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. As a deviation from past practice, USTR did not seek public comment but rather simply announced that the increase would occur.

*Id.*

66.     The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint.

**B. <u>List 4</u>**

67.     On May 17, 2019, USTR announced its intent to proceed with List 4 at an additional duty of 25% *ad valorem* on products worth $300 billion. *See Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).

68.     USTR explained that its decision was motivated by China's retreat from negotiated trade commitments, and China's further retaliatory action against U.S. commerce.

69.     Nearly 3,000 comments were filed in Docket No. USTR-2019-0004, without time for meaningful review.

70.     On August 1, 2019, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*. As a basis for this decision, the President cited to China's failure to abide with agricultural purchases and the failure to reduce exports of fentanyl.

71.     On August 20, 2019, USTR implemented List 4 in two separate tranches. *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

72.     List 4A was announced as a 10% *ad valorem* duty effective September 1, 2019. List 4B was announced as a 10% *ad valorem* duty effective December 15, 2019. *Id.* at 43,305.

73.     USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses. USTR did however claim that its determination "takes account of the public comments and the testimony." *Id.*

74. USTR cited to Section 307(a)(1)(B) and (C) of the Trade Act as legal authority for its action. USTR claimed that it was modifying its prior action taken pursuant to Section 301 of the Trade Act but failed to identify any increased burden on U.S. commerce from the practices that were the subject of the USTR's investigation. Instead the USTR pointed to "China's subsequent "defensive actions" taken to maintain those unfair acts, policies, and practices as determined in that investigation.

75. On August 30, 2019, the USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).

76. In the August 30, 2019 publication, the USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822.

77. In the August 30, 2019 publication, the USTR also cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for the action. *Id.*

78. On December 18, 2019, the USTR published notice that it would suspend List 4B tariffs.

79. On February 14, 2020, when the USTR halved the applicable duty rate on List 4A.

80. In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019.

81. The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint.

82. Plaintiff imported goods covered by List 3 and/or List 4A and was thereby subject to and directly damaged by the tariffs payments.

# STATEMENT OF CLAIMS

## COUNT ONE

### (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

83. Paragraphs 1 through 82 are incorporated by reference.

84. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See* 28 U.S.C. § 2201(a).

85. The actions taken by Defendants in the implementation and assessment of List 3 and List 4A tariffs was not authorized by law under the Trade Act of 1974.

86. Section 301 of the Trade Act authorizes the USTR to impose tariffs only if USTR has determined that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." *See* 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 or List 4 on any such determination.

87. Section 304 of the Trade Act requires the USTR to determine what action to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). The USTR's action giving rise to List 3 occurred in September 2018, and its action giving rise to List 4 occurred in August 2019, more than a year after the USTR initiated the Section 301 investigation.

88. USTR is authorized under Section 307 of the Trade Act to "modify or terminate" a Section 301(b) tariff action when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. *See* 19 U.S.C. § 2417(a)(1)(B).

89. Section 307 does not authorize the USTR to increase the tariffs for reasons that are

unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

90.     Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, reduce, or terminate such actions.

91.     Plaintiff is therefore entitled to a declaratory judgment that the Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

92.     Paragraphs 1 through 91 are incorporated by reference.

93.     The Administrative Procedure Act authorizes the Court to hold unlawful and to set aside any agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

94.     The promulgation of List 3 and List 4 exceeded the USTR's statutory authority and not in accordance with the law for the reasons set forth in Count One.

95.     No legitimate statutory basis was presented to support the "increased burden" presented by China's intellectual property policies and practices as were the subject of USTR's Section 301 investigation.

96.     Defendants promulgated List 3 and List 4a in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale.

* * *

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1)　declare that the section 301 tariffs that were assessed on products of List 3 and List 4a were unauthorized by the Trade Act and are void *in abnitio*;

(2)　declare that Defendants unlawfully promulgated List 3 and List 4 in violation of the APA;

(3)　vacate the List 3 and List 4 rulemaking;

(4)　order refunds with interest accrued, of any section 301 tariffs paid by Plaintiff under USTR section 301 List 3 or List 4A;

(5)　permanently enjoin the government from applying List 3 or List 4A against Plaintiff and from collecting any additional such tariffs from Plaintiff;

(6)　award Plaintiff its costs and reasonable attorney fees; and

(7)　grant such other and further relief as may be just and proper.

Respectfully submitted,

  /s/ Heather Jacobson
Heather Jacobson

Dated:  September 18, 2020

Junker & Nakachi, P.C.
999 Third Avenue, Suite 2525
Seattle, WA 98104
(206) 774-0927
hjacobson@tradelawcounsel.com

*Counsel to HTLM*